**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**KEICA NELL CHAPMAN,**

     **Plaintiff,**

**vs.**                     **Case No.  4:17cv154-CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of Social
Security Administration,**

     **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER

This Social Security case was referred to the undersigned upon consent of the parties by United States District Judge Mark E. Walker. ECF No. 8, 9.  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act.  *See* ECF No. 1.  After careful consideration of the record, the decision of the Commissioner is affirmed.

## I. Procedural History and Facts

Plaintiff Keica Nell Chapman filed an application for Supplemental Security Income (SSI) on June 11, 2013, alleging disability caused by breast disease, depression, anxiety, birth defect in left hip, and constant pain. Tr. 169.[1] The onset date was alleged to be June 15, 1999. Tr. 145. The application was initially denied on September 30, 2013, and upon reconsideration on November 15, 2013. Tr. 97, 103. Plaintiff requested a hearing, which was held in Tallahassee, Florida, before Administrative Law Judge (ALJ) Andrew Dixon, III, on September 11, 2015, at which Plaintiff appeared with her attorney, Alan Andrews. Plaintiff, through her attorney, amended the alleged onset date to June 11, 2013.[2] Tr. 32. Plaintiff and impartial vocational expert John Black, Ed.D., testified. Tr. 28-60.

At the hearing, Plaintiff testified that she had not worked full time for the past fifteen years. Tr. 34. She left school in eighth grade and did not obtain a GED because, she said, she could not concentrate. Tr. 36. She testified she has burning in her hips and tingling down to her toes due to back pain. *Id.* It is worse in her left leg, and is a sharp, stabbing pain like

---

[1] Citations to the second substituted transcript/administrative record (ECF Nos. 20, 20-1 through 20-8) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page. *See* motion and order at ECF No. 19 and ECF No. 21.

[2] An earlier proceeding was dismissed by order issued August 12, 2011, upon request of the Plaintiff and her lawyer. Tr. 64, 33.

"little needles are being poked in [her] toes." Tr. 38-39. She said she cannot sleep well at night, and tosses and turns and her hip pops. Tr. 36. She takes pain mediation daily but it wears off and "gets to where it just doesn't help." Tr. 37. She said she has back pain all of the time and her back and her hips can "lock up" due to pain when she is sitting or standing. *Id.* She testified she has "been known to have to be put in a wheelchair for two months." Tr. 38. She said she can stand for about 15 or 20 minutes and then must start moving and then sit down. *Id.* When sitting for less than 30 minutes, she said, she must change position. Tr. 40. When she shops, she generally uses a motorized cart. *Id.* Injections for pain have provided only short-term relief. Tr. 41. She testified that she has had two back surgeries—one in 1999 and one in 2001—and the doctors are considering another surgery. Tr. 48. She has not had any recent physical or occupational therapy. Tr. 49.

Plaintiff testified she has urinary problems which, she believes, are associated with her back pain. Sometimes she cannot urinate at all and must catheterize herself, up to twice a week. Tr. 42. No treatment is planned for that condition because the doctor's bills were too high. Tr. 49-50. She said she is still having problems with breast pain and discharge, which affects her ability to reach. Tr. 42-43.

She testified that most recently she has been taking Prozac and Risperdal for her depression and mental issues.  Tr. 43-44.  Prior to that she took Paxil and Zoloft but could not tolerate the side effects.  Tr. 48. Plaintiff said her memory and focus are impaired and sometimes she goes blank and does not remember what she is doing.  Tr. 45.  She said her husband sometimes has to remind her to eat.  Tr. 46.  She has become short-tempered and frustrated, and does not want to be around people, although she does not want to be alone at home and will call her husband to come home.  Tr. 45-46.  She no longer feels comfortable driving to the store and managing her bank account.  Plaintiff testified that she has had no treatment for any psychological or mental issues because she had no insurance or money to do so.  Tr. 47.

## II.  The Decision

On December 16, 2015, the ALJ issued a decision finding Plaintiff is not disabled and is not entitled to SSI.  Tr. 12-22.  The Appeals Council denied review on February 2, 2017.  Tr. 1-3.  Thus, the decision of the ALJ became the final decision of the Commissioner and is ripe for review. Accordingly, Plaintiff, appearing pro se, filed a Complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g).  *See* ECF No. 1.

In the decision issued on December 16, 2015, the ALJ made the following pertinent findings:

1.  The claimant has not engaged in substantial gainful activity since June 11, 2013, the application date.  Tr. 14.

2.  The claimant has the following severe impairments: degenerative disc disease, osteoarthritis of the left hip, status post Paget's disease, anxiety disorder, and anti-social personality disorder.  Tr. 14.

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 14.

The ALJ explained that the impairments do not meet the requirements of listing 1.02 or 1.04 because the record does not show any gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint with an inability to ambulate or perform fine and gross movements effectively.  *Id.*

The ALJ also found that the severity of the impairments, singly and in combination, do not meet or medically equal the criteria of listing 12.04, 12.06, and 12.08 in that the mental impairments did not result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation.  *Id.*  The ALJ found that the criteria of Paragraph C were also not met.  Tr. 16.  At the hearing, counsel for Plaintiff agreed that none of the alleged severe impairments meet the listing requirements pursuant to step three of the sequential evaluation.  Tr. 34.

4.  After careful consideration of the entire record, the claimant has the residual functional capacity to perform light work, except she claimant cannot climb ladders, ropes, and scaffolds, but she can frequently climb stairs and ramps.  She is limited to frequent balancing, kneeling, crouching, and crawling, and occasional stooping.  The claimant retains the ability to reach and to handle and

finger objects. She can tolerate up to occasional exposure to hazards such as heavy machinery and unprotected heights. The claimant can sit for 30 to 45 consecutive minutes before standing to relieve any discomfort. The claimant can stand for 20 consecutive minutes before having to sit and rest, and walk no more than 10 consecutive minutes before having to stop. Mentally, the claimant can understand, remember, and carry out simple instructions as well as perform simple repetitive tasks due to concentration deficits. She can have occasional conversations and interpersonal interactions with coworkers. Lastly, the claimant can interact with the public but should not engage in any extensive transactions or negotiations. Tr. 16.

As to back pain, the ALJ explained that radiological testing in August 2013 showed mild disc space narrowing at L4-L5 with moderate disc space narrowing at L5-S1 and vacuum disc phenomena. Tr. 17. A consultative examination in August 2013 by Dr. Victoria Te showed Plaintiff had a normal gait, normal muscle strength, normal fine and gross dexterity, and negative straight leg raising. Range of motion was normal and full. *Id.* (citing Tr. 308-12). The ALJ noted that in September 2014, radiological testing showed disc desiccation and disc space height loss and the L4-L5 disc levels with mild endplate degenerative changes, and a small disc bulge at L4-L5 with a small overlying central disc protrusion causing central stenosis with minimal bilateral foraminal narrowing and a minimal posterior disc bulge at L5-S1. *Id.* (citing Tr. 356). However, examination revealed normal gait, no evidence of motor or sensory deficits, and equal bilateral reflexes. Tr. 17. The ALJ noted that Plaintiff reported in October 2014 that her pain was improving and that treatment recommendations were inconsistent with a disabling degree of back pain. Tr. 18.

As to hip pain, the ALJ noted that Plaintiff had a history of hip pain and that a physical examination revealed lumbar paraspinal gluteal tenderness and increased pain with extension past neutral, and an audible "pop" that seemed to originate in the hip; however, straight leg raise was negative and strength was normal; and treatment for hip pain was sporadic with no treatment after March 2015. Tr. 18.[3]

---

[3] In discussing Plaintiff's hip pain, the ALJ incorrectly cited a radiological report belonging to another claimant that was erroneously included in Plaintiff's medical record. The incorrect record indicated mild to moderate osteoarthritis and a deformity of

As to Plaintiff's breast condition, the ALJ explained that she has had fibrocystic disease with a mammogram negative for cancer; and records showed symptoms were mild, with no indication of aggressive treatment measures related to the breast symptoms. Tr. 18.

As to Plaintiff's mental condition, the ALJ explained that the records do not show any formal treatment for mental health symptoms by a mental health care professional; and noting that consultative examinations diagnosed Plaintiff with adjustment disorder with sad mood and anxiety, generalized anxiety disorder, and antisocial personality disorder. *Id.* (citing Tr. 323, 435). The ALJ found that the opinion of Dr. Nina Barnes, Ph.D., that Plaintiff had no limitations on her ability to understand, remember, carry out instructions, and interact with others is highly inconsistent with allegations of disabling mental pathology. Tr. 19 (citing Tr. 435).

In support of the determination of the RFC, the ALJ cited and gave great weight to the agency consultative opinion of Edmund Molis, M.D., that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit, stand, or walk about 6 hours in an 8-hour workday; occasionally climb ladders, ropes, and scaffolds, and stoop; frequently climb ramps and stairs, balance, kneel, crouch, and crawl. Tr. 19 (citing records at Tr. 88-90). Partial weight was given to the opinion of John Thibodeau, Ph.D., an agency consultant who opined that Plaintiff could remember and follow simple and short workplace instructions, work with others, and maintain attendance and schedule. Tr. 20 (citing Tr. 74-76).

5. The claimant has no past relevant work. Tr. 20.

6. The claimant was 40 years old, which is defined a younger individual age 18-49, on the date the application was filed. Tr. 20.

7. The claimant has a limited education and is able to communicate in English. Tr. 20.

---

the left femoral head and a shallow acetabulum that was suspected to be residua of a congenital hip dislocation. Tr. 18 (citing Ex. B7F at 6). That incorrect report has been redacted from the current medical record and, pursuant to order of this Court, a corrected record was filed. ECF Nos. 19, 20, 21. Plaintiff's actual radiological tests of her hip showed mild osteoarthritis of the left hip and mild to moderate osteoarthritis of the left sacroiliac joint. Tr. 314.

8.  Transferability of job skills is not an issue because claimant does not have any past relevant work.  Tr. 20.

9.  Considering claimant's age, education, work experience, and residual functional capacity (RFC), there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 20.  Based on the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform the representative jobs of remnant sorter, DOT #789.687-146, light, SVP 2, of which there are 30,000 jobs nationally and 1,400 in Florida[4]; routing clerk, DOT #222.687-022, light, SVP 2, of which there are 43,000 jobs nationally and 2,400 in Florida; and parking lot cashier, DOT #211.462-101, light, SVP 2, of which there are 46,000 jobs nationally and 1,400 in Florida.[5]  Tr. 21.

10.  The claimant has not been under a disability, as defined in the Social Security Act, since June 11, 2013, the date the application was filed.  Tr. 21.

---

[4] The ALJ made a scrivener's error in incorrectly citing DOT #689.687-146 as the number for the job of remnant sorter.  Tr. 21.  The correct number is DOT #789.687-146.

[5] DOT refers to the Dictionary of Occupational Titles (4th Ed., Rev. 1991), which is one of the examples of sources that the ALJ may rely on for job information.  *See* SSR 00-4p; 20 C.F.R. § 404.966(d) and 416.966(d).  The ALJ may also rely on a vocational expert or other specialist.  *See* § 404.966(e).  An SVP (Specific Vocational Preparation) of 1 means "short demonstration only."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).

Based on these findings, and the reasons set forth in the decision, the ALJ

found Plaintiff is not disabled under section 1614(a)(3)(A)[6] of the Social

Security Act.  Tr. 21.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is

supported by substantial evidence in the record and premised upon correct

legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131

(11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less

than a preponderance.  It is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." Bloodsworth v.

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial

evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[7]  The Court may not decide the facts anew, reweigh the

_____

[6] Section 1614(a)(3)(A) of the Social Security Act is codified at 42 U.S.C. § 1382.
*See* Higginbotham v. Barnhart, 163 F. App'x 279, 280 n.1 (5th Cir. 2006) (unpublished).

[7] "If the Commissioner's decision is supported by substantial evidence we must
affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,
1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard,
however, does not permit a court to uphold the Secretary's decision by referring only to
those parts of the record which support the ALJ.  A reviewing court must view the entire
record and take account of evidence in the record which detracts from the evidence
relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).
"Unless the Secretary has analyzed all evidence and has sufficiently explained the

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v.

Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but

the reviewing court conducts what has been referred to as "an independent

review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir.

1985).

A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national

economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage

in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909

---

weight he has given to obviously probative exhibits, to say that his decision is supported
by substantial evidence approaches an abdication of the court's 'duty to scrutinize the
record as a whole to determine whether the conclusions reached are rational.' " Cowart
v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

(duration requirement).  Both the "impairment" and the "inability" must be

expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212

(2002).

The Commissioner analyzes a claim in five steps, pursuant to 20

C.F.R. § 416.920(a)(4)(i)-(v):

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[8]

5.  Do the individual's impairments prevent other work?

---

[8] Residual functional capacity is the most a claimant can still do despite limitations.  20 C.F.R. § 416.945(a)(1).  It is an assessment based upon all the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 416.946(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If so, she is not disabled and the application for benefits will be disapproved. At step two, the ALJ must determine if the claimant has a medically determinable impairment that is severe or a combination of impairments that is "severe." If the claimant has a severe impairment or combination of impairments that is severe, the analysis proceeds to step three. At step three, if the ALJ determines that claimant's impairments meet or medically equal the criteria of an impairment listed in Appendix 1, and if the duration requirement is met, the claimant is disabled and the application for benefits will be approved. If not, the analysis proceeds to step four. At step four, consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. The claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that, despite the claimant's impairments, the claimant is able to perform other work available in significant numbers in the national economy in light of the claimant's RFC, age, education, and work experience. *See* <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237 (11th Cir. 2004);

Jones v. Apfel, 190 F.3d 1224, 1228-29 (11th Cir. 1999); Chester, 792 F.2d

at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20

C.F.R. § 416.920(a)(4)(v), (e) & (g).  If the Commissioner carries this

burden, the claimant must prove that he or she cannot perform the work

suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011

(11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled and,

consequently, is responsible for producing evidence in support of her claim.

*See* 20 C.F.R. § 416.912(a); Moore, 405 F.3d at 1211.  The responsibility

of weighing the medical evidence and resolving any conflicts in the record

rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir.

2007) (unpublished).

The opinion of the claimant's treating physician must be accorded

considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is so because treating physicians "are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of [the

claimant's] medical impairment(s) and may bring a unique perspective to

the medical evidence that cannot be obtained from the objective medical

findings alone or from reports of individual examinations, such as

consultative examinations or brief hospitalizations." 20 C.F.R.

§ 416.927(c)(2).[9] "This requires a relationship of both duration and

frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). The

reasons for giving little weight to the opinion of the treating physician must

be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837,

841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at

1241. "The Secretary must specify what weight is given to a treating

physician's opinion and any reason for giving it no weight, and failure to do

so is reversible error." MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause

exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).

Good cause may be found when the opinion is "not bolstered by the

evidence," the evidence "supported a contrary finding," the opinion is

"conclusory or inconsistent with [the treating physician's] own medical

records," the statement "contains no [supporting] clinical data or

information," the opinion "is unsubstantiated by any clinical or laboratory

findings," or the opinion "is not accompanied by objective medical evidence

or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937

---

[9] This provision applies to claims filed before March 27, 2017. For claims filed after that date, the applicable provision is section 416.920c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."

F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Some opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 416.927(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (1996) (rescinded eff. Mar. 27, 2017).  Although physicians' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC.

A treating physician's opinion that a claimant is unable to work and is necessarily disabled would not be entitled to any special weight or deference. The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability. 20 C.F.R. § 416.927(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6 (rescinded eff. Mar. 27, 2017). In Lewis, the court noted that "we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings." 125 F.3d at 1440.

Generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(c)(2), (5)[10]; *see also* Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that opinions of specialists may be particularly important, and entitled to greater weight than those of other physicians, with respect to certain diseases that

---

[10] *See* note 9, *supra*.

are "poorly understood within much of the medical community"); <u>Somogy v. Comm'r of Soc. Sec</u>., 366 F. App'x 56, 65 n.13 (11th Cir. 2010) (unpublished) (same).  Although a claimant may provide a statement containing a treating physician's opinion of her remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. 20 C.F.R. §§ 416.912, 416.913, 416.927, 416.945.

## IV. Analysis

Plaintiff alleges in her Complaint that additional record support shows she has a birth defect in her hip and suffers from manic paranoid schizophrenia with manic bipolar condition that causes her to be disabled and that denial of disability benefits deprives her of her constitutional rights. ECF No. 1 at 5.  She alleges in her memoranda filed in support of her Complaint that the inclusion of a one-page radiological report of another person in Exhibit B7F of this record constituted reversible error; failure to allow her temporary Medicaid to obtain further documentation was reversible error; disability should have been found based on Exhibit B2A; the Commissioner omitted a critical page of medical documentation from Dr. Robert Burns that shows she cannot return to the workforce and that she is on pain medication that impairs her ability to work; the Commissioner

failed to provide a critical medical record of Dr. Robert Burns; the additional

record of Dr. Burns would have made a difference in the case and warrants

remand; Plaintiff was deprived of her constitutional rights to life, liberty, and

due process; and Plaintiff was deprived of her constitutional rights and is

also entitled to a remedy under 8 U.S.C. 1324c(a)(3)(5).  *See* ECF Nos. 1,

13, 17, 22.

### Inclusion of Erroneous Medical Report

Plaintiff fails to explain how the inclusion of a one-page radiological

report pertaining to another claimant in the record of this case requires

remand.  The erroneous page was cited by the ALJ only as evidence that

Plaintiff has a basis to complain of hip pain.  *See* Tr. 18.  The ALJ stated:

> With respect to the claimant's alleged hip pain, treatment
> records document complaints of hip pain.  Radiological testing
> of her left hip performed August 2013 showed a mild to
> moderate osteoarthritis.  Additional view showed a deformity of
> the left femoral head and a shallow acetabulum which was
> suspected to be residua[] from a congenital hip dislocation
> (Exhibit B7F).

Tr. 18.  Thus, the ALJ did not rely on the erroneous record to conclude

Plaintiff had no basis for hip pain.  Moreover, the correct hip X-ray report of

August 27, 2013, by the same provider indicated that Plaintiff had mild

osteoarthritis of the left hip and mild to moderate osteoarthritis of the left

sacroiliac joint.  Tr. 314.  The correct report shows similar hip osteoarthritis,

albeit a somewhat less severe form of it than the report cited by the ALJ.

Plaintiff cannot show prejudice from this erroneous inclusion of the

unrelated but similar record, nor can she show that had the error not

occurred, the ultimate finding of the ALJ would have been different.  *See*

Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (concluding that the

ALJ erred in a statement of fact, but the error was harmless where no

prejudice was shown and the error was irrelevant to the denial of

application for disability benefits); Muhammad ex rel. T.I.M, v. Comm'r of

Soc. Sec., 395 F. App'x 593, 601 (11th Cir. 2010) (unpublished) (same).

### Denial of Temporary Medicaid

Plaintiff alleges that the Commissioner failed to allow her to receive

temporary Medicaid to obtain further medical documentation and to seek

additional medical treatment.  ECF No. 13 at 1.  Plaintiff has not provided a

record reference to show that the Commissioner denied a claim for

temporary Medicaid.  To the contrary, the Commissioner informed Plaintiff

on November 15, 2013, in the notice of ineligibility for SSI that "you may be

eligible for medical assistance (Medicaid).  If you have any questions about

your eligibility for Medicaid or you need medical assistance you should get

in touch with the Department of Children and Families."  Tr. 103.  Further,

whether Plaintiff was improperly denied Medicaid is not an issue to be

considered in this SSI proceeding.  As the Defendant correctly notes, the

State of Florida administers the Medicaid program in this state through the

Agency for Health Care Administration.  *See* Garrido v. Dudek, 731 F.3d

1152, 1154-54 (11th Cir. 2013).  The Court in Garrido explained:

> Medicaid is a cooperatively funded federal-state program
> designed to help states provide medical treatment to their
> needy citizens.  States devise and fund their own medical
> assistance programs, subject to the requirements of the federal
> Medicaid Act, and the federal government provides partial
> reimbursement.  *See* 42 U.S.C. §§ 1396b(a), 1396d(b).  A
> state's participation in the Medicaid program is voluntary, but
> once a state chooses to participate it must comply with federal
> statutory and regulatory requirements. *See* Alexander v.
> Choate, 469 U.S. 287, 289 n.1 (1985).  All states, including
> Florida, participate in the Medicaid program.  Florida
> administers its Medicaid program through the Agency for Health
> Care Administration ("AHCA").  *See* Fla. Stat. §§ 409.901(2),
> 409.902.

*Id.*  A claim for denial of Medicaid benefits brought under 42 U.S.C.

§ 405(g) does not raise a federal issue and is properly dismissed.  *See*

Vinson v. La. Sec'y of Health & Hosp., No. 2:09-cv-661, 2009 WL 1406296,

at *1-2 (W.D. La. May 19, 2009).  This claim has no merit.

### RFC Assessment by a Single Decisionmaker (SDM)

Plaintiff alleges the Commissioner failed to follow the opinion

evidence of the SDM, concerning Plaintiff's RFP, located at Exhibit B2A,

pages 8-9.  ECF No. 13 at 1.  Plaintiff alleges that the opinion of Jasmine

Plummer, SDM, on September 27, 2013, was that Plaintiff has limitations

that would hinder her work efforts.  ECF No. 13 at 1.  However, the

Commissioner was not required to rely on the SDM.  The Eleventh Circuit

has explained:

> In Florida, a single decision maker ("SDM") is assigned to make the initial disability determination after "appropriate consultation with a medical or psychological consultant."  *See* 20 C.F.R. § 404.906(b)(2).  But the "SDM" designation connotes no medical credentials.  *See id.* § 404.906(a), (b)(2).  Indeed, the SSA's Program Operations Manual System ("POMS") explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that "SDM-completed forms are not opinion evidence at the appeals level." . . . .  As an SDM with no apparent medical credential, [the SDM] was not an acceptable medical source.

Siverio v. Comm'r of Soc. Sec., 461 F. App'x 869, 871 (11th Cir. 2012)

(unpublished).

Furthermore, the RFC determined by SDM Plummer recognized

fewer limitations affecting Plaintiff's RFC than those found by the ALJ in

this case.  The ALJ found Plaintiff could "frequently" climb stairs and ramps,

kneel, crouch and crawl.  Tr. 16.  The SDM concluded that Plaintiff's ability

to climb ramps and stairs, kneel, crouch, and crawl was "unlimited."  Tr. 73.

The SDM concluded Plaintiff could frequently lift 25 pounds and

occasionally lift 50 pounds, consistent with the definition of medium work.

*See* § 416.967(c); Tr. 72.  The ALJ found, however, that Plaintiff was

limited to light work, which anticipates lifting only 20 pounds at a time with

frequent lifting of up to 10 pounds.  *See* § 416.967(b); Tr. 16.  The ALJ and

the Commissioner were not required to rely solely on the opinion of SDM

Plummer in determining if Plaintiff is disabled.

Even assuming the ALJ should have discussed the SDM opinion and

should have given it some weight, it would not have changed the decision

in any manner that would have benefitted Plaintiff.  The ALJ's RFC

determination reflected more limitations than those opined by SDM

Plummer.  Thus, any error was harmless.  *See, e.g.*, <u>Baez v. Comm'r of</u>

<u>Soc. Sec.</u>, 657 F. App'x 864, 869 (11th Cir. 2016) (unpublished) (citing

<u>Diorio</u>, 721 F. 2d at 728).  This issue has no merit and does not require

remand.

### Records Submitted to Appeals Council

Plaintiff contends that records of Robert Burns, M.D., would prove

that she cannot return to work.  ECF No. 13 at 1-2.  She contends that one

page of the record was "left out" but she does not indicate what the record

would have shown.  The record in this case contains Exhibit B16F, pages

446 and 447, which appears to have been submitted to the Appeals

Council.  *See* Tr. 5 (listing exhibits B15F and B16F to Notice of Appeals

Council Action); Tr. 1-4.  Exhibit B16F is a record from Meridian Clinic that

contains notes of a January 14, 2016, follow-up visit to Dr. Burns to

evaluate Plaintiff's treatment for opioid dependence and addiction.  Tr. 446-47.  The notes indicate that Plaintiff was being successfully treated with suboxone, which she was to continue at the same dose.  Tr. 447.  The information contained in this record does not indicate that Plaintiff cannot return to work.

Plaintiff bore the burden of producing evidence she deemed necessary to support her claim.  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a) (requiring claimant to furnish medical and other evidence of claimed impairments); *see also* Mosely v. Acting Comm'r of Soc. Sec. Admin., 633 F. App'x 739, 741 (11th Cir. 2015) (unpublished) (same).  Moreover, Plaintiff was represented prior to and at the hearing; thus, the ALJ had no heightened duty to develop the record with documents that Plaintiff alleges were "left out."   *See* Ellison, 455 F.3d at 1276-77.  *See also* Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

The page of Dr. Burn's records which discussed Plaintiff's treatment for opioid addiction was submitted to the Appeals Council and considered but was found not to provide a basis to require a remand.  Tr. 1-4.  The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's action, findings, or

conclusions are contrary to the weight of the evidence currently in the

record. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th

Cir. 2007). The issue in a disability case is whether the Plaintiff is entitled

to benefits during a specific period of time, which is prior to the date of the

ALJ's decision. Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999). The

record submitted to the Appeals Council was dated January 14, 2016, and

does not indicate that it relates to Plaintiff's medical condition during a

period of time prior to the date of ALJ's decision on December 16, 2015.

Tr. 447.

The Appeals Council denied review in this case, stating that it

considered the additional evidence and found that it does not provide a

basis for changing the ALJ's decision. Tr. 1-4. When a claimant presents

new evidence to the Appeals Council and review is denied, the Court will

consider the claimant's evidence anew to determine whether the new

evidence renders the denial of benefits erroneous. Ingram, 496 F.3d at

1262. "Section 405(g) permits a district court to remand an application for

benefits to the Commissioner . . . by two methods, which are commonly

denominated "sentence four remands" and "sentence six remands," each of

which remedies a separate problem." Id. at 1261. "The fourth sentence of

section 405(g) provides the federal court 'power to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security, with or

without remanding the cause for a rehearing.' "[11]  *Id.*   To obtain a

"sentence four" remand, the claimant must show that, in light of the new

evidence submitted to the Appeals Council, the ALJ's decision to deny

benefits is not supported by substantial evidence in the record as a whole.

*Id.* at 1266-67.  This showing has not been made.

Plaintiff also cites Exhibit B11F at page 20 for her allegation that

Dr. Burns has her on "the highest level of narcotic for pain witch (sic)

impairs my ability to work."  ECF No. 13 at 2 (citing exhibit at Tr. 382).  That

cited record, however, is not from Dr. Burns and does not indicate a

narcotic level or that such would impair Plaintiff's ability to work.  *See* Tr.

379-83.

The ALJ did not fail to develop the record in the absence of evidence

not submitted by Plaintiff or her representative.  Moreover, because the

evidence cited by Plaintiff is not chronologically relevant to the date of the

ALJ's decision and does not demonstrate that the ALJ's decision is not

---

[11] "The sixth sentence of section 405(g) provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.' "  Ingram, 496 F.3d at 1261.

based on substantial evidence, the Appeals Council did not err in denying review. For these reasons, this claim lacks merit.

## Records Submitted to This Court

Plaintiff submitted to this Court a new medical record of her visit to Dr. Burns at the Meridian Clinic on February 8, 2016. ECF No. 17-1. The sixth sentence of 42 U.S.C. § 405(g) permits a district court, on review, to remand an application for benefits to the Commissioner for consideration of new evidence that previously was unavailable. 42 U.S.C. § 405(g). "[A] sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review." Ingram, 496 F.3d at 1267. "To show that a sentence six remand is needed, 'the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result and (3) there is good cause for the failure to submit the evidence at the administrative level.' " Enix v. Comm'r of Soc. Sec., 461 F. App'x 861, 863 (11th Cir. 2012) (unpublished) (citing Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)).

Plaintiff does not explain why this document was not submitted at the administrative level. The document is dated February 9, 2016, and the

Appeals Council did not deny her request for review until February 2, 2017, almost one year later. *See* Tr. 1. Further, the opinions expressed in the record do not support a finding that Plaintiff is totally disabled. Dr. Burns opines in the record that Plaintiff has "significant deficits in the functional, musculoskeletal and neurological [e]xams that will have a life-long negative impact on her overall level of functioning and health," and which "make it difficult for her to compete in the workforce and to hold a job once it is obtained." ECF No. 17-1 at 3.

Moreover, the results of the medical examination noted in the document do not completely bear out Dr. Burns' opinions. The notes indicate that Plaintiff was alert and oriented X3 with appropriate mood and affect, and that her recent and remote memory was intact. She had a normal attention span and concentration. *Id.* at 2. The notes state that cranial nerves are intact and coordination was normal. She tested 5 out of 5 in strength in upper and lower extremities, with "normal limited (sic) of motion" in both shoulder joints on external rotation. *Id.* Her gait was "slightly antalgic" with normal station and stability. Her straight leg raise was negative from the sitting position. She did have limited range of motion in her lumbar spine and needed to shift her weight frequently when standing for longer than a few minutes. *Id.* The significance of Dr. Burns'

opinion expressed in this record is further diminished by his caveat that "[s]he may benefit from a formal vocational rehabilitation assessment and/or functional capacity exam at a center with better quantitative functional testing equipment and for a formal disability rating." *Id.* at 3. Where a medical source expresses uncertainty as to the medical findings, the Commissioner has no obligation to defer to the opinion. Mason v. Comm'r of Soc. Sec., 430 F. App'x 830, 832 (11th Cir. 2011) (unpublished) (citing Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991) (same)). This is especially true where the opinion conflicts with evidence of the Plaintiff's daily activities. *See* Mason, 430 F. App'x at 832.

There is no reasonable probability that this record would change the administrative result. The concerns raised by Dr. Burns' opinion were addressed by the ALJ's RFC determination and the stated limitations placed on her work environment. Thus, this new evidence does not require a remand under the sixth sentence of 42 U.S.C. § 405(g).

### Plaintiff's Remaining Claims

Plaintiff contends that she has been denied life and liberty under the Fifth and Fourteenth Amendments to the United States Constitution. ECF No. 17 at 1; ECF No. 22. She states:

> Had commissioner of social security truthfully and legally went through my transcripts as she has stated and is now allowed to

> submit another transcript depriving Keica Nell Chapman of my
> life and my liberty of the Fifth Amendment and Fourteenth
> Amendment of the U.S. Constitution [1]:617 whereas Due
> Process is evident in my case.  I Keica Nell Chapman also find
> commissioner of Social Security for both transcripts under 8 US
> code 1342c(a)(3)(5).[12]

ECF No. 17.  Plaintiff appears to be contending that her constitutional rights

were violated by the Commissioner substituting a corrected transcript for

one in which a radiological report applicable to another person was

erroneously included.  Plaintiff also appears be contending that she is

entitled to some relief pursuant to Title 8 U.S.C. § 1324c(a)(3), (5).

However, Plaintiff does not explain how the initial inclusion and subsequent

substitution of a corrected record containing the redaction of the

erroneously-included pages in her record has deprived her of a

constitutional right.[13]

As discussed above pertaining to the first part of Plaintiff's claim, the

substituted transcript removed a radiological report relating to an individual

other than Plaintiff.  Although the ALJ cited the incorrect document in the

decision, he did not rely on the erroneous record to conclude Plaintiff had

---

[12] Misspellings have been corrected.

[13] The fact that the ALJ cited to the incorrect document in the decision indicates
that the document was erroneously included in the packet of medical records initially
submitted by Radiology Associates for use as evidence in the case.  There is no
indication that the Commissioner knowingly included the erroneous document in the
record.

no basis for hip pain.  Instead, the ALJ relied on it to support the finding

that "treatment records document complaints of hip pain."  Tr. 18.

Moreover, the correct hip X-ray report pertaining to Plaintiff dated August

27, 2013, indicated that she had mild osteoarthritis of the left hip and mild

to moderate osteoarthritis of the left sacroiliac joint.  Tr. 314.  Thus, the

correct report shows somewhat similar hip osteoarthritis as that cited by the

ALJ based on the incorrect report.  Plaintiff has not shown how the

inclusion, and subsequent redaction, of one erroneous report in the record

deprived Plaintiff of life, liberty, or due process.  Nor has she shown that

the inclusion and subsequent redaction of the erroneous record deprived

the ALJ's decision of substantial evidence.

As to the second part of this contention, Plaintiff does not explain how

Title 8 U.S.C. §§ 1324c(a)(3), (5) relate to her case.  Title 8 U.S.C.

§§ 1324c(a)(3), (5) are provisions within the Immigration and Naturalization

Act, not the Social Security Act, prohibiting a person from knowingly using

the documents of another person or using false documents to satisfy any

requirement under the Immigration and Naturalization Act or in making an

application for benefits under that act.  The provisions are irrelevant to this

proceeding.  Conduct of the hearing, review of the evidence, and judicial

review of the findings of fact or the decision of the Commissioner are to be

conducted under the provisions of 42 U.S.C. § 405.  The issues are whether the ALJ had substantial evidence to support the findings and conclusions in the decision and whether the ALJ followed the correct law. Plaintiff's final claims provide no basis on which to conclude the findings of the ALJ lacked substantial evidence, that the ALJ failed to follow the law, or that remand is required for any reason.[14]

## V. Conclusion

Plaintiff does not contend that the ALJ's decision is not supported by substantial evidence.  Her main contention is that medical records of Dr. Burns should be considered and could make difference in the outcome. Her other claims are collateral to the pertinent issues in the case and do not bear on the issues of the applicable law or the substantial evidence to support the decision.

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.  Further, no error has been shown in the actions of the Appeals Council in denying review.  Accordingly, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for

---

[14] Plaintiff also alleges that another person received her personal mail from this Court, thus violating her rights.  ECF No. 13.  However, the incorrect mailing of an order of the Court is irrelevant to whether the decision of the ALJ is based on substantial evidence and comports with the law.

Supplemental Security Income benefits is **AFFIRMED.** The Clerk shall

enter judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on January 4, 2018.

s/ **Charles A. Stampelos**_____
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**